B. F. OHMES, d/b/a Perrytex Communications Company, and City of Perryton, Appellants,

v.

GENERAL TELEPHONE COMPANY OF the SOUTHWEST, Appellee.

No. 7404.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 16, 1964.

Rehearing Denied Dec. 14, 1964.

Allen, Allen & Reavis, Lemon, Close & Atkinson, Perryton, for appellants.

Holdridge & Preston, San Angelo, for appellee.

DENTON, Chief Justice.

This appeal, resulting from three separate cases filed in the trial court, involves

the validity of a city ordinance which would require General Telephone Company of the Southwest to interconnect its facilities with appellant B. F. Ohmes' mobile radio system. The trial court held the City of Perryton was without authority to require General to interconnect its facilities with Ohmes' mobile radio systems, and that such ordinance was invalid.

Ohmes is a licensed radio common carrier and operates in the Perryton area. General Telephone operates a telephone system under a franchise from the City of Perryton. Ohmes' company receives messages from its customers by way of mobile radios, and his dispatcher relays these messages to their proper destinations. Ohmes requested the telephone company to connect his radio system to that of the telephone system in order to enable Ohmes' customers to talk directly from the field to others without the necessity of going through a dispatcher. General refused to make the interconnection. Upon Ohmes' application, and after a hearing, the City of Perryton ordered General to interconnect with Ohmes' mobile radio facilities. This order was appealed by General to the District Court. In the meantime, the City passed Ordinance No. 337 which required telephone companies using the City's streets and alleys to interconnect their land lines with lines of licensed radio common carriers who make application therefor and offer to pay the prescribed rates. Upon General's refusal to comply with the ordinance, Ohmes sought an injunction in a separate suit in the district court to require General's compliance with the ordinance. In a third suit General sought an injunction against the City to enjoin the enforcement of the ordinance. All three suits are consolidated for the purposes of this appeal.

The authority of the City to enact Ordinance No. 337 is determined by an interpretation of Article 1119 and Articles 1426–1432, Vernon's Ann.Civ.St., which relate to regulation of telephone and telegraph companies by city commissioners and commissioners' courts. The material statutes are as follows:

"Art. 1426. Transfer of messages

"All companies and corporations that own or operate telephone or telegraph lines for the purposes of transmitting messages from one point to another, are hereby required to arrange for conversations or transfer of messages as hereinafter provided.

"Art. 1427. Telephone connections

"All persons, companies, firms or corporations doing a telephone business in this State shall be compelled to make physical connections between their toll line at common points, for the transmission of messages or conversations from one line to another. Such connection shall be made through the switchboard of such persons, companies, firms or corporations, if any is maintained at such points, so that persons so desiring may converse from points on one of such lines to points on another."

"Art. 1429. Transfers excepted

"In no case shall any message be transferred from one line to another against the will of the company first handling the same, when it is possible for such company to deliver said message direct to the party for whom it is intended by way of the line or lines operated and owned by said company. No telegraph or telephone company shall, under the provisions of this subdivision be compelled to receive from the wires or lines of any other telegraph or telephone company and convey to its final destination any message originating at any point on its own lines."

The pertinent part of Article 1119 reads as follows:

"The governing body of all incorporated cities and towns in this State incorporated under the General Laws thereof shall have the power to regu-

late, by ordinance, the rates and compensation to be charged by all persons, companies, or corporations using the streets and public grounds of said city or town, and engaged in furnishing water, gas, telephone, light, power, or sewerage service to the public, and also to prescribe rules and regulations under which such commodities shall be furnished, and service rendered, and to fix penalties to enforce such charges, rules, and regulations."

It is appellants' contention the City had authority to order the interconnection by virtue of Article 1119 giving it authority "to prescribe rules and regulations under which such commodities shall be furnished, and service rendered, and to fix penalties to enforce such charges, rules, and regulations."; together with the requirements of Articles 1426 and 1427 of telephone companies to make physical connection between their toll lines at common points for the transmission of messages from one line to another. Appellants concede the applicable statutes were passed many years prior to the establishment of mobile radio services such as offered by Ohmes, but argue the intent of the statutes applies to such modern services. Although no case has been cited which supports this contention, appellee by implication seems to agree.

■ The statutory requirement that telephone companies arrange for transfer of messages must be viewed in light of the language of the material statutes. In the first place, by the clear language of the statutes the interconnection required applies only between the company's "toll line at common points," Article 1427. These statutes have no application to interconnections between local telephone services of two communications systems. Telephone toll service is defined by the Federal Communication Act as a service not only between different exchange areas, but it is a service for which there is made a separate charge not included in the contract with subscribers for exchange service. Southwestern Bell Telephone Co. v. United States, D.C., 45 F.Supp. 403. As seen from the language of Article 1429, no telephone company shall be compelled to receive from the wires or lines of another telephone company and transfer or convey the message to its final destination if the message originates at any point on the line of the company being requested to interconnect. We think this language precludes Ohmes' requested interconnection. Under this record General Telephone also furnishes land lines and mobile telephone services to customers of their own in the Perryton area. Not only would Ohmes' request result in messages being conveyed which originate on General's own line, but it would have the effect of requiring General to provide equal facilities to a competitor of the same service in the same area. The Tennessee Supreme Court in Home Telephone Co. v. People's Telephone & Telegraph Co., 125 Tenn. 270, 141 S.W. 845, 42 L.R.A.,N.S., 550, dealt with a similar question with the following language:

"Telephone and telegraph companies are common carriers of intelligence, and must give the same service on the same terms to all who apply therefor, without partiality or unreasonable discrimination."

"But this does not mean that a telephone company is bound to permit another telephone company to make a physical connection with its lines for the purpose of using them as its own subscribers use them. There is a wide difference between a telephone company's transmitting to any point on its line equally and indiscriminately the messages of all companies that offer them and are willing to pay the same fare for the same service, and admitting such outside companies or their patrons to the same use of its lines that its own patrons are entitled to."

■■ The Texas Supreme Court interpreted the same statutes involved here in Southwestern Telegraph & Telephone Co.

v. State, 109 Tex. 337, 207 S.W. 308. Although the court there upheld the penalties assessed for a violation of a city ordinance requiring interconnection by Southwestern Telegraph & Telephone with Paducah Telephone Company's toll line, the court limited the application of the city's ordinance:

> "It is also clear that under the act it could not be required to afford its service for the transmission of any message or conversation originating at a point on its own line, such, for instance, as Paducah. The order is to be so construed."

We think this same limitation must be placed on the ordinance in question and such limitation will invalidate the ordinance requiring the interconnection being sought by Ohmes. The City's authority to "prescribe rules and regulations" under Article 1119 is limited and qualified under the plain terms of Articles 1426–1430.

■ Appellants' contention the trial court erred in declaring Ordinance No. 337 invalid is also without merit. Being of the opinion the City was without authority to pass the ordinance to require the interconnection complained of, the ordinance would be invalid. The ordinance having been passed without authority on the part of the City of Perryton is void, and the attempted enforcement of such ordinance is an invasion of the property rights of the telephone company and can be enjoined. Goar v. City of Rosenberg, 53 Tex.Civ.App. 218, 115 S.W. 653; City of Brownwood v. Brown Telegraph & Telephone Co., 106 Tex. 114, 157 S.W. 1163; State ex rel. Brauer v. City of Del Rio, (Tex.Civ.App.), 92 S.W.2d 287.

Being of the opinion the record reveals no reversible error and that the judgment entered by the trial court was correct under the pleadings and evidence, such judgment is affirmed.

Affirmed.

CHAPMAN, J., not sitting.